ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| PABLO TORO MATOS<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | **TA2025RA00017** | *REVISIÓN ADMINISTRATIVA* procedente de Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: 215-24-130<br><br>Sobre: Querella Disciplinaria |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de agosto de 2025.

Comparece ante este foro el Sr. Pablo Toro Matos, *in forma pauperis* y por derecho propio (señor Toro o "el recurrente") y nos solicita que revisemos una *Resolución* emitida por el Departamento de Corrección y Rehabilitación (DCR o "parte recurrida"), notificada el 6 de febrero de 2025. Mediante el referido dictamen, el DCR le imputó una violación al Código 147 del Reglamento Núm. 9221-2020, *infra*.

Por los fundamentos que exponemos a continuación, **CONFIRMAMOS** la *Resolución* recurrida.

### I.

El 12 de diciembre de 2024, la oficial correccional Yaritza Ruiz (Oficial Ruiz), presentó ante el DCR el *Informe de Querella de Incidente Disciplinario*, número de querella 215-24-130, por violación al Código 108 y 147 del Reglamento Núm. 9221-2020 del 8 de octubre de 2020, intitulado *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional*

(Reglamento Núm. 9122-2020).[1] Alegó que, al momento de entregarle la correspondencia al señor Toro, dentro de la carta encontraron un aparente accesorio de teléfono celular ("*board*").

El 28 de enero de 2025, fue celebrada la vista disciplinaria ante el oficial examinador de vistas, el Sr. Andrés Martínez Colón (Oficial Examinador).

Posteriormente, el 6 de febrero de 2025, fue notificada la *Resolución* objeto de controversia.[2] Mediante esta, le imputaron al señor Toro violación a la Regla 15, Código 147 del Reglamento Disciplinario, Reglamento Núm. 9221-2020, *infra*. El Oficial Examinador concluyó que, de la prueba documental y testimonial, sostuvo que el recurrente cometió el acto prohibido sobre utilizar el correo o correspondencia para propósitos ilícitos. Indicó que, la carta con destino al Tribunal de Apelaciones había salido de la Institución Bayamón 501, y así constaba en el Libro de Cartas Legales, Folio Núm. 64. Añadió que, había una certificación en la que hacía constancia que dicha Institución sólo ponchaba la correspondencia legal que recibían, por ello, la carta no tenía ponche de salida. Por tanto, al devolver la carta a la dirección del señor Toro, concluyó que aun cuando había mediado o no consentimiento del recipiente, le fue imputada responsabilidad por el acto prohibido.

En desacuerdo, el 7 de febrero de 2025, el recurrente presentó una solicitud de reconsideración.

---

[1] *Informe de Querella de Incidente Disciplinario*, anejo núm. 5 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Resolución*, anejo núm. 9 en el SUMAC.

El 13 de mayo de 2025, el DCR notificó una *Resolución*, en la que consignó las siguientes determinaciones de hechos:[3]

1. Que el 13 de diciembre de 2024 se presentó una querella contra el querellado por el Código 108 y 147 del Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional (en adelante, Reglamento Disciplinario), Reglamento Núm. 9221-2020.

2. Que, conforme la querellante, durante el día de ayer, diciembre 12 de 2024, aproximadamente a las 5:30 p.m., me encontraba entregando la correspondencia. Al llamar al confinado Pablo Toro Matos para entregarle la correspondencia legal, la cual fue abierta frente al confinado, dentro de la carta se encontraba un aparente accesorio de teléfono celular (board).

3. Que el querellado contrató al Lcdo. Carlos García Morales (RUA 11049) para que lo represente en la vista administrativa disciplinaria.

4. Que el Lcdo. García Morales interrogó a la oficial Ruiz y esta declaró a las preguntas que este le expuso durante la vista disciplinaria.

5. Que el Lcdo. García Morales en su argumentación final expuso lo siguiente:

> "Que está de acuerdo con la oficial Yaritza Ruiz y que ella lo que hizo fue cumplir con sus funciones como oficial en el correo, pero que el asunto es una situación atípica y que es ilógico que el querellado envíe una carta al Tribunal de Apelaciones en Bayamón cuando no existe un Tribunal de Apelaciones en Bayamón y que el remitente envié una evidencia ilegal y la misma regrese nuevamente a él para que sea abierta nuevamente en presencia del querellado para perjudicarse. Que esa carta fue enviada por una tercera persona con el propósito de perjudicar al querellado que tiene pendiente un cambio de custodia. Que su cliente desconocía lo que había en el sobre devuelto y que esa carta llegó a la dirección del remitente y no hay una certificación de que esa carta haya salido de la Institución Bayamón 501 y debería haber un ponche que certifique que la carta sale de la institución."

6. Que el Oficial Examinador luego de evaluar lo declarado por el representante legal del querellado y a base de la totalidad de la prueba que obra en el expediente administrativo determinó encontrar Incurso al querellado por violar el código 147 de la Regla 15 del Reglamento Disciplinario. No encontró causa por el código 108.

---

[3] *Resolución*, anejo núm. 2 en SUMAC.

7. Que el Oficial Examinador impuso como sanción disciplinaria la suspensión del privilegio de comisaría (excepto artículos de higiene personal), recreación activa, visita, actividades especiales y cualquier otro privilegio que se le conceda en la institución por el periodo de cuarenta (40) días calendarios.

8. Que el querellado inconforme con la determinación emitida presentó Solicitud Reconsideración y **expone, alega y solicita** lo siguiente:

a) Que al no haber sido hallado Incurso de violar el código 108 del Reglamento Disciplinario, no debería ser hallado Incurso por la violación del código 147. Esto porque si no obra en autos del expediente de querella alguna prueba, entiéndase cualquier tipo o material de telecomunicaciones definido en el código 108 que establezca la posesión, distribución, uso, venta o introducción de teléfonos celulares o equipos de telecomunicaciones por parte del apelante, naturalmente no se consume la conducta ilegal de la utilización del correo o de la correspondencia para propósitos ilícitos o su tentativa. Al no existir prueba del aparente accesorio de teléfono celular (*board*) para conectarlo con el uso del correo o de la correspondencia de manera ilegal, ¿de qué manera el apelante utilizó ilegalmente el correo o la correspondencia?

b) Que el Oficial Examinador no indica en la *Resolución* sobre la querella, cuál fue el uso ilegal que le dio el apelante al correo y solo se limitó a hallar Incurso al apelante de violar el código 147, violentando el derecho constitucional del apelante a ser notificado oportuna y adecuadamente de la naturaleza y causa del proceso perpetuado en la Enmienda XIV de la Constitución de los EEUU.

c) Que no fue tomada en consideración la solicitud del apelante para que la oficial María Pacheco, encargada de la correspondencia en la Institución Bayamón 501, declarara en la vista disciplinaria contra el apelante en defensa de este. Lo que vulneró el derecho del apelante a un debido proceso de ley y a presentar prueba a su favor como lo establece la sección 3.1 de la *Ley de Procedimiento Administrativo Uniforme* y tampoco tomó en consideración el informe que requirió el apelante hecho por la oficial María Pacheco en el Libro de Correspondencia de la Institución Bayamón 501, lo que acredita que conoce de antemano que han intentado perjudicar al apelante mediante el uso del correo.

d) Que como bien señaló el Oficial Examinador de Vistas Disciplinarias en la resolución, "la Institución Correccional Bayamón 501 no tiene como parte del manejo y monitoreo de la correspondencia que sale al exterior, un

sello o ponche que diga que salió de dicha institución" y que en el presente caso el envío de correspondencia que se registró el 1ro de julio de 2024 dirigido al Tribunal de Apelaciones con el nombre del apelante no fue inspeccionado, tampoco puede garantizarse que en efecto el apelante fue quien la envió al Tribunal en la mencionada que fecha. Más aún, la querellante no estableció en su relato en la querella que el apelante fue quien la remitió la Tribunal de Apelaciones el 1ro de julio de 2024 para que posteriormente se consumara lo que dispone el código 108, al ser devuelta en la institución carcelaria. Ello se conoce como duda razonable.

e) Que la mera alegación en la querella de que el apelante violó el código 147, sin más, no es suficiente a la luz de una acusación para someter al apelante a un proceso administrativo disciplinario, pues, naturalmente se debe establecer el resultado previsto por el querellado mediante intención u omisión para que se establezca que se utilizó el correo o la correspondencia de manera ilegal.

f) Que la sanción impuesta por el Oficial Examinador de Vistas Disciplinarias de suspensión de privilegios institucionales por cuarenta (40) días calendarios es una excesiva y se considera *ultra vires* a lo establecido en el Reglamento Disciplinario y por tal razón debe ser revocada.

g) Que en la *Resolución* emitida el Oficial Examinador no hizo mención de que halló incurso al apelante por violar el código 147 en la modalidad de tentativa, ello, pese a que concluyó que no existe causa por el código 108. Que determinó hallar incurso al apelante de violar el código 147 sin que exista material físico ilegal alguno para que se consuma la violación del referido código.

h) Que nos parece que el Oficial Examinador de Vistas Disciplinarias debió hallar incurso al apelante, en el peor de los escenarios de la violación al código 147, pero en la modalidad de tentativa. No obstante, al no existir causa por el código 108, entonces de igual manera la tentativa del acto prohibido también quedaría derrotada y desestimada. Por lo cual, solicita se revoque la *Resolución* emitida y se declara No incurso de violar el código 147.

Añadió, en cuanto a la alegación sobre haberlo encontrado incurso de violar el Código 147 del Reglamento, el Oficial Examinador concluyó que el señor Toro hizo uso del correo para propósitos o fines contrarios a los establecidos en el Reglamento

Disciplinario, independientemente haya mediado consentimiento del recipiente a la hora del recibo del correo o correspondencia. Asimismo, indicó que era inconsistente encontrarlo incurso bajo el Código 108, puesto que, la querellante al sólo indicar que lo que había en la correspondencia era un aparente accesorio de teléfono celular, no se configuraron los elementos necesarios establecidos en el Reglamento. No obstante, la prueba había demostrado que el señor Toro había utilizado el correo para propósitos contrarios al Reglamento.

En cuanto a la alegación sobre no permitir que la Oficial María Pacheco (señora Pacheco), encargada de la correspondencia en la Institución Bayamón 501, declarara en la vista, vulneró su derecho a un debido proceso de ley. El Oficial Examinador indicó que, la Regla 31 del Reglamento Disciplinario permite la presencia de testigos que tengan información pertinente al caso. No obstante, la señora Pacheco no fue citada, debido a que, no tenía conocimiento personal del incidente que motivó la querella. Por ello, no podía declarar por algo que no le constaba. En consecuencia, declaró *No Ha Lugar* a la solicitud de reconsideración y confirmó la sanción impuesta.

Aún inconforme, el 16 de junio de 2025, el señor Toro presentó el recurso de revisión judicial, en el que formuló los siguientes señalamientos de error:

> Abusó de su discreción el OEVD Andrés Martínez Colón al hallar incurso al recurrente de infringir el Código 147, al emplear, bajo error manifiesto, una patente interpretación errada sobre la distinción entre los códigos 108 y 109 del Reglamento Disciplinario 9221, *supra*, con el único propósito de hacer creer que como la prueba ofrecida para acusar al recurrente, del uso

ilegal del correo o la correspondencia cosiste en un "aparente accesorio de teléfono celular (*board*)", ello cumple, de facto, con su identificación y autenticación.

Abusó de su discreción el OEVD Andrés Martínez Colón al emplear, bajo error manifiesto, una patente interpretación contradictoria en cuanto a lo dispuesto en la Regla 31 del Reglamento Disciplinario 9221, *supra*, y el derecho constitucional que tiene el recurrente de presentar pruebas y testigos a su favor, establecido en la Constitución de los Estados Unidos de América y en la Constitución de Puerto Rico.

El 3 de julio de 2025, emitimos una *Resolución* concediéndole a la parte recurrida el término dispuesto en nuestro Reglamento, para que presentara su alegato.

El 24 de julio de 2025, el DCR compareció mediante *Moción Informativa y Solicitud de Relevo de Orden*.

Así, con el beneficio de la comparecencia de las partes, procedemos resolver.

## II.

### -A-

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.,* dispone sobre el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T-JAC, Inc. v. Caguas Centrum Limited,* 148 DPR 70, 80 (1999). Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran

deferencia y consideraciones a las decisiones de los organismos administrativos en vista de la vasta experiencia y conocimiento especializado.[4] *Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019); *Mun. de San Juan v. Plaza Las Américas*, 169 DPR 310, 323 (2006); *Hernández Álvarez v. Centro Unido*, 168 DPR 592, 615-616 (2006). Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas. *Metropolitana, SE v. ARPE*, 138 DPR 200, 213 (1995); *Viajes Gallardo v. Clavell,* 131 DPR 275, 289-290 (1992).

Es por las razones expuestas que las decisiones de los foros administrativos están investidas de una presunción de regularidad y corrección. *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 892 (2008); *Vélez v. ARPE*, 167 DPR 684, 693 (2006); *Rivera Concepción v. ARPE*, 152 DPR 116, 123 (2000). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales, a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. PR v. JP*, 146 DPR 64, 130 (1998); *ARPE v. JACL,* 124 DPR 858, 864 (1989).

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors, Motors*, 161 DPR 69, 76 (2004). Conforme a lo cual, habrá que determinar si la actuación de la

---

[4] Los fundamentos aportados en la muy reciente decisión del Tribunal Supremo Federal en *Loper Bright Enterprises et al., v. Raimondo*, 603 U.S. __ (2024), 144 S.Ct. 2444, cuestionan en lo esencial buena parte de la jurisprudencia que dirige el proceso de revisión por los tribunales de las determinaciones administrativas. Sin embargo, juzgamos que la situación fáctica en el caso ante nuestra atención no nos requiere que profundicemos sobre el asunto.

agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. de San Juan v. CRIM*, 178 DPR 164, 175 (2010). Por tanto, la revisión judicial de una determinación administrativa se circunscribe a determinar si: (1) el remedio concedido por la agencia fue apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo, y (3) las conclusiones de derecho fueron correctas. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Torres Rivera v. Policía de PR,* 196 DPR 606, 626-627 (2016).

Por otra parte, nuestro Tribunal Supremo ha identificado circunstancias en que corresponde no observar tal deferencia. En específico, dicho alto foro ha reconocido que la referida deferencia a las determinaciones administrativas cederá cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación de la ley, y (3) ha mediado una actuación irrazonable o ilegal. *Acarón, et al v. DRNA*, 186 DPR 564, 584 (2012); *Marina Costa Azul v. Comisión*, 170 DPR 847, 852 (2007).

-B-

El *Reglamento de Normas para Regir la Correspondencia de los Miembros de la Población Correccional en Instituciones Correccionales y Programas de la Administración de Corrección* del 24 de octubre de 2008 (Reglamento Núm. 7594-2008), tiene la finalidad de establecer normas y procedimientos para administrar la correspondencia de los confinados. En particular, el Artículo V(1) reconoce el derecho de los miembros de población correccional a recibir y enviar comunicaciones

escritas, siempre que cumplan con las normas y criterios adoptados. Por tanto, el Artículo V(4) del Reglamento reconoce que la correspondencia recibida en la institución correccional será objeto de monitoreo e inspección por el personal designado para ello.

A esos efectos, el Reglamento Núm. 7594-2008 reconoce tres (3) tipos de correspondencia, a saber: (i) correspondencia general, (ii) correspondencia privilegiada o especial, y (iii) correspondencia rechazada. En su Artículo IV(3) define la "correspondencia general" como aquella que recibe o envía un confinado, la cual podrá ser abierta e inspeccionada por el personal designado para ello, excluyendo la "correspondencia como privilegiada o especial".

Ahora bien, en el Artículo IV(4) del Reglamento dispone que la "correspondencia privilegiada o especial" es aquella que se recibe o se envía a tribunales de justicia federales o estatales, entre otros. Además, que tal correspondencia no puede ser leída ni abierta por el personal designado, a menos que sea en presencia del confinado o que medie su renuncia a ese derecho.

El Artículo XII(4) detalla que el personal designado llevará un registro sobre la fecha y hora en la cual se recibe una correspondencia legal en la institución correccional y cuando la misma es entregada al confinado. Mientras que, en su Artículo IV(5), establece que la correspondencia rechazada es aquella que es devuelta al remitente por no cumplir con las normas establecidas en el propio reglamento.

En cuanto al registro de la correspondencia, el Reglamento dispone que "[l]as cartas que lleguen del

correo serán registradas en un libro de entrada de correspondencia, que incluirá el nombre del remitente y destinatario, fecha en que se recibió y fecha en que se entregó al destinatario la correspondencia." Art. VII(6), Reglamento 7594-2008.

-C-

El Reglamento Núm. 9221-2020, mejor conocido como el *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional* del 8 de octubre de 2020 (Reglamento Núm. 9221-2020), fue aprobado con el propósito de establecer las disposiciones reglamentarias aplicables a los confinados que cometan o intenten cometer un acto prohibido bajo la jurisdicción del DCR. Regla 3(11) del Reglamento Núm. 9221-2020, *supra*. A través de éste se dispuso de un mecanismo para imponer medidas disciplinarias en las instituciones correccionales, mientras se le garantiza un debido proceso de ley a los confinados. Regla 3, Reglamento Núm. 9221, *supra*.

La Regla 6 del Reglamento Núm. 9221-2020 establece que cualquier oficial correccional o funcionario del DCR puede presentar una querella, cuando sea testigo de un acto o incidente prohibido, o infracción a las norma y reglamentos del DCR por parte de un miembro de la población correccional o tiene un motivo fundado para creer que un miembro de la población correccional cometió alguna infracción a las normas o reglamentos del DCR. Regla 6 del Reglamento Núm. 9221.

En lo pertinente, el Reglamento Núm. 9221-2020, define "acto prohibido" como "cualquier acto que implique una violación a las normas de conducta de la institución que conlleve la imposición de medidas

disciplinarias, incluyendo cualquier acto u omisión, o conducta tipificada como delito". Regla 4 del Reglamento Núm. 9221-2020. Una vez se determina que un confinado ha incurrido en el acto prohibido que se le haya imputado, procede la imposición de una sanción disciplinaria. Regla 17 del Reglamento Núm. 9221-2020.

Así pues, la Regla 15 especifica cuáles son las conductas de la población correccional que se entienden prohibidas. En lo que aquí compete, el Código 147 establece como acto prohibido sujeto a sanción lo siguiente:

> (147) Utilización del Correo o de la Correspondencia para Propósitos Ilícitos o su Tentativa – Se prohíbe la utilización del correo o de la correspondencia para propósitos o fines contrarios a los establecidos en este Reglamento, independientemente haya mediado consentimiento del recipiente a la hora del recibo del correo o correspondencia. Regla 15 (147) del Reglamento Núm. 9221.

De otra parte, la Regla 31 del precitado Reglamento hace referencia a la presentación de testigos durante la Vista ante el Oficial Examinador, y dispone como sigue:

> 1. El Oficial Examinador y el miembro de la población correccional querellado podrán solicitar la presencia de testigos que tengan información pertinente y estén razonablemente disponibles.
>
> 2. En aquellos casos en los que el testigo sea excluido, ya sea por declaración o en persona, la base de esta exclusión debe ser documentada por el Oficial Examinador.
>
> 3. No será necesaria ni se solicitará la comparecencia de testigos para presentar evidencia repetitiva, ni testigos adversos, cuando su conocimiento sobre el incidente surja de manera clara de la querella disciplinaria, documentos complementarios o del informe del Oficial de Querellas.
>
> 4. La presencia del querellante en la vista disciplinaria es un asunto oficial de estricto cumplimiento, cuando así sea requerido.

5. Si durante el proceso de vista administrativa surge alguna duda adicional relacionada a la querella disciplinaria o a la declaración de algún testigo, se podrá requerir la presencia en la vista disciplinaria.

6. El miembro de la población correccional imputado de un acto prohibido tendrá el derecho de presentar prueba y declaraciones de testigos a su favor, siempre y cuando no entre en riesgo la seguridad de la institución, la del miembro de la población correccional perjudicado o la de cualquier otra persona.

7. El número de declaraciones y de testigos que se presentarán en la vista dependerá de las circunstancias particulares del caso y la información que estos posean. El Oficial Examinador puede excluir las declaraciones de testigos o rehusar llamar a declarar a un testigo por los siguientes fundamentos:
   a. El testimonio no es pertinente.
   b. El testimonio es innecesario.
   c. Cuando el testimonio resulta repetitivo.

### III.

En el caso de autos, el señor Toro presentó un recurso de revisión administrativa, en el cual solicitó revisión de la *Resolución* emitida por el DCR mediante la cual se le declaró incurso por violar el Código 147 del Reglamento Núm. 9221-2020, *supra*. En su recurso, planteó dos (2) señalamientos de error. En el primero, alega que incidió el DCR al determinar que había infringido el Código 147 del Reglamento, al aplicar de forma equivocada la diferencia entre los Códigos 108 y 109. Sostiene que dicha interpretación, tuvo como único fin hacer parecer que un objeto que aparenta ser un accesorio de celular (*board*) era suficiente para identificar y autenticar la supuesta violación.

El señor Toro menciona que no fue encontrado incurso del Código 108 de Reglamento Núm. 9221-2020, debido a que la oficial de querellas no logró describir correctamente el aparente accesorio de teléfono celular

encontrado en la correspondencia. Por ello, reitera que, al no lograr identificar adecuadamente el objeto, tampoco podían condenarlo por violación al Código 147 del precitado Reglamento.

Según explicamos, el Reglamento Núm. 7594-2008, *supra*, reconoce el derecho de los miembros de la población correccional a recibir correspondencia. En lo aquí pertinente, establece la "correspondencia privilegiada o especial" como aquella que se recibe de un tribunal federal o estatal. Asimismo, dispone que la correspondencia no será leída ni abierta por el personal designado, salvo en presencia el confinado receptor.

De otra parte, el Reglamento Núm. 9221-2020, *supra*, establece que está prohibido utilizar el correo para propósitos o fines contrarios a los establecidos en el Reglamento, independientemente haya mediado consentimiento del recipiente a la hora del recibo del correo o correspondencia.

Según surge del expediente, el 13 de diciembre de 2024, al entregarle la "correspondencia legal" al recurrente, la Oficial Ruiz al abrir la carta encontró un "aparente accesorio de teléfono celular (*board*)". La carta iba dirigida a una dirección que no correspondía con el Tribunal de Apelaciones de Bayamón, por lo que, fue devuelta a su remitente, en este caso, el señor Toro.

Por ello, conforme la reglamentación aplicable, independientemente haya mediado consentimiento del recipiente a la hora del recibido del correo o correspondencia, el recurrente utilizó el correo para propósitos o fines contrarios al Reglamento.

Finalmente, en su segundo señalamiento de error, esboza que erró el DCR al interpretar de manera

contradictoria lo dispuesto en la Regla 31 del Reglamento, dado que tenía derecho a presentar prueba y testigos a su favor. Indica que, el DCR le impidió presentar a la Oficial María Pacheco, como testigo de incidentes previos en los que, de cierta forma lo habían intentado perjudicar al enviarle material de contrabando a través del correo, similar al caso de autos. Por ello, alega que la oficial Pacheco podía haber arrojado luz u otra perspectiva de la situación.

La Regla 31 del Reglamento Núm. 9221-2020, *supra*, reconoce y rige lo relacionado al derecho de los confinados a la presentación de testigos durante la Vista ante el Oficial Examinador. El primer inciso de dicha regla dispone que tanto el Oficial Examinador como el confinado pueden solicitar la presencia de los testigos que tengan información pertinente y están razonablemente disponibles. Además, en los casos en que el testigo sea excluido, el segundo inciso establece que la base de la exclusión debe ser documentada por el Oficial Examinador.

A pesar de lo anterior, según surge del expediente la señora Pacheco no tenía conocimiento del incidente que motivó la querella. Por lo que, no podía declarar por algo que no le constaba. Así las cosas, es forzoso concluir que no hay fundamento para variar la determinación emitida por el Oficial Examinador.

Por consiguiente, en ausencia de argumentos del señor Toro que impliquen un abuso de discreción del Oficial Examinador del DCR, no debemos intervenir con la determinación recurrida.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la determinación recurrida.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones